**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:20-cr-140-GFVT-MAS-1 |
| ) | |
| **ROBERT LEE ESTILL,** ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION**

The Court, on referral from Judge Van Tatenhove, considers reported violations of supervised release conditions by Defendant Robert Lee Estill ("Estill"). [DE 3]. Considering the record, proffer, and Estill's allocution at the revocation hearing, the Court recommends the District Court revoke Estill's supervised release and sentence him to an incarceration term of time-served with 32 months of supervised release to follow, inclusive of 90 days at the Schwartz Center.

## I.   BACKGROUND

On September 16, 2020, United States District Judge for the Southern District of Texas Diana Saldana sentenced Estill to 8 months' imprisonment followed by a 3-year term of supervised release for conspiring to transport an undocumented alien within the United States. [DE 1-2]. Given the time Estill had already served prior to final judgment, he was released from prison and began serving his term of supervised release on September 17, 2020. Estill's judgment included the following supervised release conditions:

You must not commit another federal, state, or local crime.

You must refrain from any unlawful use of a controlled substance.

[DE 1-2]. The judgment further required Estill to submit to mandatory drug testing as a component of his supervised release. [*Id.*].

The Southern District of Texas approved a transfer of jurisdiction to this District in November 20, 2020, and Judge Van Tatenhove accepted jurisdiction on November 23, 2020. [DE 1]. On that same date, the United States Probation Office ("USPO") in this District submitted a petition recommending revocation of Estill's term of supervised release based on alleged violations of the above conditions. [DE 3]. Judge Van Tatenhove approved the petition and ordered that an arrest warrant be issued. [*Id.*].

The violation report, dated November 23, 2020, stems from two positive drug tests.[1] First, on November 6, 2020, Estill submitted a urine sample that tested positive for cocaine. Estill initially denied using the substance. On November 12, 2020, Estill returned to the USPO and admitted to having used cocaine on November 4. Also on November 12, Estill submitted a second cocaine-positive urine sample. Estill denied further intentional cocaine use and advised the USPO that his girlfriend had recently been arrested for murder and laced his beverages with cocaine to ensure that he would be incarcerated as well. However, Estill subsequently spoke with the USPO over the phone and admitted to intentional cocaine use. He ultimately signed an admission form conceding that he had used cocaine on November 9 or 10. On December 11, 2020, the USPO submitted an addendum to the November 2020 violation report, stating that Estill again tested positive for cocaine upon his arrest on December 10. Estill admitted to using the substance on December 9.

---

[1] The USPO confirmed that each contained controlled substances via testing by Alere laboratories.

## II.  PROCEDURAL HISTORY

The Court conducted an initial appearance on the supervised release violations pursuant to Federal Rule of Criminal Procedure ("Rule") 32.1 on December 11, 2020.  [DE 7].  The Court advised Estill of his constitutional rights, including his right to a preliminary hearing pursuant to Fed. R. Crim. P. 32.1(b)(1)(A).  Estill knowingly, voluntarily, and intelligently waived his right to a preliminary hearing; thus, the Court found probable cause that the allegations in the violation report were true.  The United States also moved for interim detention.  The Court conducted a detention hearing on December 14, 2020 and found that Estill failed to carry his release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a).  The Court ordered he be detained until a determination of his revocation status is reached.

At the final hearing on January 13, 2021,[2] the Court found Estill to be competent to enter a knowing, voluntary, and intelligent stipulation to the charged violations.  For purposes of the Rule 32.1 proceedings, Estill admitted the factual bases for the violations as described in the violation report.  Accordingly, the Court found that the United States established the reported violations pursuant to 18 U.S.C. § 3583(e).  [DE 16].

Estill stipulated to the commission of state and federal crimes, Grade B violations, and to the unlawful use of a controlled substance, a Grade C violation. "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."  United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 7B1.2(b).  Accordingly, the most serious Grade B violations will be utilized for purposes of this proceeding.

---

[2] Due to COVID-19 outbreaks at Estill's detention facility and the Marshal Service's resulting inability to transport Estill to the Court for an in-person hearing, the Court twice continued the final revocation hearing date. [DE 10, 12].

The criminal history category established at sentencing was Category III. [Judgment, Statement of Reasons, Page 1].

The parties do not dispute that the Guidelines propose a sentence of 8 to 14 months, with a statutory maximum of 24 months. *See* 18 U.S.C. § 3583(e)(3). Should Estill's supervised release be revoked, the Court can re-impose an additional term of supervised release of up to 36 months, less any term of imprisonment imposed upon revocation. *See* 18 U.S.C. § 3583(h).

At the final hearing, the parties agreed upon a proposed sentence of time-served, followed by participation in a 90-day residential treatment program at the Schwartz Center in Lexington, Kentucky, as soon as a bed becomes available at the facility.[3] Estill also expressed desire to schedule and attend medical appointments as quickly as possible after his initial inpatient period at the Schwartz Center.

### III.   ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Estill's violations, the presentence investigation report, and the factors set forth in 18 U.S.C. § 3583(e).

In recommending a sentence, the Court must consider the nature and circumstances of Estill's original conviction, the statutory factors in 18 U.S.C. § 3553 as incorporated in § 3583(e), and the Guidelines range. *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). Estill's original conviction was for conspiracy to transport an undocumented alien within the United States. [DE 1-2]. Per the Presentence Report, though Estill had six criminal convictions prior to the instant case, resulting in his criminal history Category III, the only convictions that generated

---

[3] Per the parties' and United States Probation Officer Melissa Markwell's representations at the hearing, the program consists of an initial 30-day inpatient program followed by a 60-day outpatient residential program in a halfway house environment.

4

criminal history points for purposes of his federal sentencing on the transport conspiracy offense were misdemeanors (shoplifting). [Presentence Report, at ¶¶ 30–35]. Two earlier felonies (in 1981 and 1992) did not accrue points due to their age.

Considering the factors set forth in 18 U.S.C. § 3553, revocation is necessary to protect the public from further crimes of the defendant, to reflect offense seriousness, to justly punish Estill, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A), (C). Revocation is also a necessary consequence for Estill's abuse of the Court's trust. *See* U.S.S.G. Ch. 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust").

Estill used cocaine, a dangerous and unlawful substance, on three separate occasions. The first use occurred less than two months after the start of Estill's supervised release term. Further, Estill's initial dishonesty to Officer Markwell about his use on the first two occasions is concerning—particularly, the elaborate fabrication related to his girlfriend allegedly lacing his beverages. Additionally, Estill continued to unlawfully use cocaine in December 2020, even after two positive drug tests and related use admissions the previous month. Repeated unlawful drug use even after USPO intervention, as well as the surrounding thread of initial dishonesty, requires a significant consequence. Revocation is the appropriate result.

Critically, in fashioning a revocation sentence, the Court must provide Estill with any needed treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). Estill admitted to battling substance use disorder issues, particularly involving cocaine, after the death of his wife. Per the record and consistent with Estill's own representations, Estill requires substantial substance use disorder treatment. The Court believes that the recommended inpatient stay at the Schwartz Center, followed by accompanying outpatient care in a halfway house setting, will provide appropriate and necessary treatment for Estill in the most effective manner.

Estill has a relatively limited criminal history (all misdemeanor violations, with the exception of this federal offense) in the past ten years. Per the Presentence Report, these misdemeanor violations apparently largely involved the shoplifting of food and clothing items from Wal-Mart and Kroger. The District Judge originally sentenced Estill substantially below the applicable Guidelines range for the underlying transport conspiracy offense. Estill's Guideline range was 18 to 24 months, and he received 8 months of incarceration. [Presentence Report, at ¶ 55; DE 1-2]. The District Judge granted the defense's variance request, finding the ultimate 8-month sentence sufficient but not greater than necessary to achieve the sentencing purposes and reflect the § 3553(a) factors. [Statement of Reasons, at 3].

This is Estill's first supervised release violation, though the Court recognizes that it occurred not long after the commencement of his supervised release term. Further, the Court credits the genuineness of Estill's allocution at the final hearing and appreciates his apology to Officer Markwell and to the Court for his dishonesty. Estill's willing recognition of his need for substance use disorder assistance and his interest in pursing it is encouraging and an important first step toward treatment effectiveness. Estill, after slipping into substance use disorder following his wife's death, has ostensibly realized that he needs to work toward developing healthy coping mechanisms to safeguard his sobriety going forward. The United States recommended, and the Court agrees, that mental health counseling and treatment will be an essential component of his journey. To the extent that such programming is available at the Schwartz Center during his time there, the Court recommends that it be integrated into Estill's treatment there.

Considering all of the facts, the Court believes that the proposed sentence of time-served, followed by a total of 90 days at the Schwartz Center once a bed there becomes available, is a sufficient but not greater than necessary consequence. Consistent with the District Judge's

decision to vary downward in sentencing Estill for the underlying offense, the Court views Estill's background (including the personal difficulties and substance use disorder issues that arose after the passing of his wife of 30 years),[4] the degree of seriousness of the underlying offense, the specific circumstances of the convictions in his criminal history, and the circumstances surrounding the instant violations (namely, Estill's current remorse and desire for treatment) as warranting a slight variance from the applicable 8-month guideline minimum.  *See also* 18 U.S.C. § 3553(a)(6) (directing courts to consider the need to avoid unwarranted sentencing disparities).

Combining the period of time that Estill has served during these revocation proceedings and awaiting a Schwartz Center bed with the 90 days that he serve at the Schwartz Center, the ultimate recommended sentence is a term of 4-5 months, split between incarceration, inpatient treatment, and outpatient treatment.  The treatment components would occur as a required part of Estill's post-incarceration 32-month term of supervised release.[5]  As noted, in fashioning this sentencing recommendation the Court has thoroughly considered the need to provide Estill with treatment in the most effective manner as well as the various kinds of sentences available.  *See* 18 U.S.C. § 3553(a)(2)(D), (a)(3).

---

[4] *See* Presentence Report, at ¶ 45 (indicating that the marriage occurred in 1989 and Estill's wife passed in 2019).

[5] Estill's underlying September 2020 Judgment imposed three years of supervised release. In this revocation proceeding, the Court may impose up to three years of supervised release, less any term of imprisonment imposed upon the instant revocation.  Estill has been in custody on these proceedings since roughly December 10, 2020.  Per the Court's understanding at the final hearing on January 13, 2021, the parties anticipated relatively prompt bed availability.  Assuming a bed availability date of March 1, 2021 at the absolute latest—out of an abundance of caution—the Court is left with a balance of approximately 33 months of imprisonment to impose if and as appropriate.  The Court finds that a period of 32 months, as a conservative but still apt number, is a sufficient but not greater than necessary additional supervision term that places Estill's supervised release expiration date approximately where it originally would have been per the underlying judgment.

The Court believes that the recommended sentence appropriately punishes Estill, reflects offense seriousness and promotes respect for the law, sanctions Estill's breach of the Court's trust, and deters future similar conduct by providing Estill with needed substance use disorder and mental health treatment as contemplated by § 3553(a).

## IV.   **CONCLUSION**

Accordingly, for the reasons stated herein, the Court **RECOMMENDS** that:

(1) Estill be found guilty of all violations;

(2) Estill's supervised release be **REVOKED**;

(3) Estill be sentenced to an incarceration period of **TIME-SERVED**, extending until and through the date of bed availability at the Schwartz Center; and

(4) Estill serve a 32-month term of supervised release to follow, inclusive of the following specific conditions in addition to the conditions already imposed by the underlying Judgment:

   a. Estill shall participate in and complete an initial 30-day inpatient treatment program at the Schwartz Center; and

   b. Following completion of the initial inpatient program, Estill shall complete the discussed 60-day outpatient residential treatment program through the Schwartz Center, occurring in a halfway house-type environment.

Estill preserved his right of allocution. Absent a waiver of allocation, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration,

*de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 27th day of January, 2021.



Signed By:
Matthew A. Stinnett  MAS
United States Magistrate Judge