**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 5:20-cr-140-GFVT-MAS-1 |
| ROBERT LEE ESTILL, ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION**

The Court, on referral from Judge Van Tatenhove, considers reported violations of supervised release conditions by Defendant Robert Lee Estill ("Estill"). [DE 24]. Considering the record, proffer, and Estill's allocution at the revocation hearing, the Court recommends that the District Court revoke Estill's supervised release and sentence him to an incarceration term of 5 months, with 24 months of supervised release to follow. The Court further recommends that the District Court impose a condition requiring Estill's participation in outpatient substance use disorder treatment during the period of supervised release, with the mechanics and details of such treatment programming to be determined by the United States Probation Office ("USPO").

**I.   FACTUAL BACKGROUND**

On September 16, 2020, United States District Judge for the Southern District of Texas Diana Saldana sentenced Estill to 8 months' imprisonment followed by a 3-year term of supervised release for conspiring to transport an undocumented alien within the United States. [DE 1-2]. Given the time Estill had already served prior to final judgment, he was released from prison and began serving his term of supervised release on September 17, 2020. Estill's judgment included, *inter alia*, the following supervised release conditions:

>   **Mandatory Condition #1:** You must not commit another federal, state, or local crime.
>
>   **Mandatory Condition #3:** You must refrain from any unlawful use of a controlled substance.
>
>   **Standard Condition #2:** After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
>
>   **Standard Condition #5:** You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements, you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

[DE 1-2]. The judgment further required Estill to submit to mandatory drug testing as a component of his supervised release. [*Id.*].

The Southern District of Texas approved a transfer of jurisdiction to this District on November 20, 2020, and Judge Van Tatenhove accepted jurisdiction on November 23, 2020. [DE 1]. On that same date, the USPO in this District submitted a petition recommending revocation of Estill's term of supervised release based on alleged violations of Mandatory Conditions #1 and #3 above, and Judge Van Tatenhove issued an arrest warrant. [DE 3]. The November 23, 2020 violation report stemmed from cocaine-positive drug tests on November 6, 2020 and on November 12, 2020. A third positive test subsequently occurred upon Estill's arrest on December 9, 2020. Estill ultimately admitted that he had used cocaine prior to each positive test.

On referral from Judge Van Tatenhove, the Court conducted a final supervised release revocation hearing based on these violations on January 13, 2021.[1] [DE 16]. The Court recommended that Judge Van Tatenhove find Estill guilty of all listed violations, revoke his

---

[1] COVID-19 issues delayed Defendant's transport to the courthouse for the final hearing. [DE 10, 12].

supervised release, and sentence him to time-served with 32 months of supervised release to follow. [DE 17]. The Court further recommended that Judge Van Tatenhove require, as a condition of the imposed supervised release term, Estill to participate in 30 days of inpatient substance use disorder treatment followed by 60 days of outpatient treatment at the Schwartz Center in Lexington, Kentucky. [*Id.*]. On February 5, 2021, Judge Van Tatenhove adopted the Court's Report and Recommendation, revoked Estill's supervised release, and imposed the recommended penalties. [DE 22]. As an additional condition of supervised release, Judge Van Tatenhove ordered as follows:

> **Special Condition #2:** Following completion of the initial inpatient program, you must complete the discussed 60-day outpatient residential treatment program through the Schwartz Center, occurring in a halfway house-type environment.

[DE 23].

On February 9, 2021, Estill was admitted to the Schwartz Center. On April 21, 2020, USPO Officer Melissa Markwell ("Officer Markwell") was unable to verify Estill's continued participation in treatment at the Schwartz Center. Officer Markwell subsequently learned that Estill had been discharged from the facility due to noncompliance (after completing the initial 30-day inpatient portion of treatment) and was residing at an unknown location in Lexington. Also on April 21, Officer Markwell made contact with Estill's daughter at Estill's previous address and left written instructions to report to the USPO. Estill failed to report as directed.

On April 22, 2021, Officer Markwell submitted a violation report alleging that Estill had violated Standard Conditions #2 and #5, as reflected in his original Judgment, as well as Special Condition #2, as reflected in his February 2021 Revocation Judgment. Based on the conduct outlined in the April 22 violation report, Judge Van Tatenhove issued a warrant for Estill's arrest. [DE 24, 25]. The Marshal Service arrested Estill in Lexington on April 29, 2021.

## II.     PROCEDURAL HISTORY

The Court conducted an initial appearance on the supervised release violations alleged in the April 22 report, pursuant to Federal Rule of Criminal Procedure ("Rule") 32.1, on May 4, 2021. [DE 28]. The Court advised Estill of his constitutional rights, including his right to a preliminary hearing pursuant to Fed. R. Crim. P. 32.1(b)(1)(A). Estill knowingly, voluntarily, and intelligently waived his right to a preliminary hearing; thus, the Court found probable cause that the allegations in the violation report were true. The United States also moved for interim detention, and Estill did not seek his release. The Court thus found that Estill failed to carry his release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a) and ordered that he be detained until a determination of his revocation status is reached.

At the final hearing on May 19, 2021, the Court found Estill to be competent to enter a knowing, voluntary, and intelligent stipulation to the charged violations. For purposes of the Rule 32.1 proceedings, Estill admitted the factual bases for the violations as described in the violation report. Accordingly, the Court found that the United States established the reported violations pursuant to 18 U.S.C. § 3583(e). [DE 30].

Estill stipulated to the violations of Standard Conditions #2 and #5 and Special Condition #2—all Grade C violations. "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 7B1.2(b). With all violations being of equal Grade, the Court utilizes Grade C as the applicable category for purposes of this proceeding. Estill's criminal history category as established at sentencing was Category III. [Judgment, Statement of Reasons, Page 1].

The parties do not dispute that the Guidelines propose a resulting sentence of 5 to 8 months' imprisonment, with a statutory maximum of 24 months. *See* 18 U.S.C. § 3583(e)(3). Should Estill's supervised release be revoked, the Court can re-impose an additional term of supervised release of up to 36 months, less any term of imprisonment imposed upon revocation. *See* 18 U.S.C. § 3583(h).

### III.    ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Estill's violations, the presentence investigation report, and the factors set forth in 18 U.S.C. §§ 3583(e) and 3553(a). In recommending a sentence, the Court must consider the nature and circumstances of Estill's original conviction, the statutory factors in 18 U.S.C. § 3553 as incorporated in § 3583(e), and the Guidelines range. *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). As the Court observed in analyzing the proper sentence following Estill's prior revocation, Estill's original conviction was for conspiracy to transport an undocumented alien within the United States. [DE 1-2]. Per the Presentence Report, though Estill had six criminal convictions prior to the instant case, resulting in his criminal history Category III, the only convictions that generated criminal history points for purposes of his federal sentencing on the transport conspiracy offense were misdemeanors (shoplifting). [Presentence Report, at ¶¶ 30–35]. Two earlier felonies (in 1981 and 1992) did not accrue points due to their age.

Considering the applicable factors set forth in 18 U.S.C. § 3553(a), revocation is again necessary to protect the public from further crimes of the defendant, to deter Estill from future unlawful conduct, and to provide appropriate correctional treatment. 18 U.S.C. § 3553(a)(2)(B), (C), (D). Revocation is also a necessary consequence for Estill's abuse of the Court's trust. *See* U.S.S.G. Ch. 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust"). The latter consideration is particularly strong given

the Court's recommendation, and Judge Van Tatenhove's imposition, of a revocation sentence on the prior violations that was well below the then-applicable Guidelines range. The Guidelines range for the prior violations—multiple instances of cocaine use—was 8 to 14 months. [DE 17, at Page ID # 50]. As noted, the Court afforded Estill substantial leniency, recommending that Judge Van Tatenhove sentence him to time-served (ultimately comprising approximately two months' imprisonment) and that he participate in inpatient and outpatient treatment as a part of further supervised release. In so recommending, the Court emphasized "Estill's willing recognition of his need for substance use disorder assistance and his interest in pursuing it" and further observed that Estill had "ostensibly realized that he needs to work toward developing healthy coping mechanisms to safeguard his sobriety going forward." [*Id.*, at Page ID # 52].

The conduct underlying the current violations is inconsistent with Estill's professed commitments to recovery and to supervised release compliance—central bases for the Court's lenient recommendation and Judge Van Tatenhove's ultimate corresponding sentence on the prior violations. The opportunity to participate in the Schwartz Center programs was intended to facilitate Estill's long-term sobriety. Further, the supervised release framework is foundationally intended to provide the resources and structure needed to succeed post-incarceration; consistent, sustained communication with the supervising probation officer is a critical component of that structure. Accordingly, even assuming Estill's explanation for his discharge from the Schwartz Center—that he was terminated after returning to the facility ten minutes late on three occasions, due to public transit delays on his return trip from work—the Court is still concerned with Estill's failure to communicate with Officer Markwell as required.

Estill had several opportunities to communicate with Officer Markwell. Instead, he elected to abscond for roughly two weeks. First, had Estill expressed to Officer Markwell his difficulties

6

in timely returning to the facility after work, Officer Markwell perhaps could have intervened on his behalf or offered a solution before the situation progressed to Estill's discharge from the Schwartz Center.  Second, had Estill contacted Officer Markwell upon his discharge to inform her and to arrange next steps, Estill and the USPO could have worked collectively to remedy the situation before it arose to the level of a supervised release violation.  Finally, had Estill reached out to Officer Markwell at any point during the two weeks that followed, the situation still would be markedly better than it currently stands.

Estill's failure to communicate with Officer Markwell and his complete detachment from all supervised release parameters for approximately two weeks—even despite the Court's leniency in relation to the prior violations that resulted in the treatment condition at issue—warrants revocation to fairly punish the serious abuse of the Court's trust in him.  *See* U.S.S.G. Ch. 7, Pt. A. intro. comment 3(b).  Revocation is further necessary to deter Estill from such conduct in the future and to instill in him a firm commitment to compliance with his supervised release terms.  And, revocation is appropriate to protect the public from the criminal substance use that likely would plague Estill if he fails to cooperate with the very supervised release requirements designed to benefit him, including acutely needed treatment.  *See* 18 U.S.C. §§ 3553(a)(2)(B), (C).

In fashioning a revocation sentence, the Court must provide Estill with needed correctional and rehabilitative treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(D).  Based on the considerations previously discussed, the Court perceives a within-Guidelines sentence as appropriate, but not greater than necessary, to serve all statutory purposes and reflect the revocation sentencing factors.  However, a few mitigating aspects of Estill's character and background warrant, in the Court's view, a sentence at the very bottom of the applicable Guidelines range.  *See* 18 U.S.C. § 3553(a)(1) (considering the defendant's history and characteristics).

First, the Court recognizes Estill's explanation for his discharge which, if true, renders him relatively inculpable with respect to the termination basis itself (though not the surrounding failure to communicate with the USPO). The United States did not present any facts contradicting Estill's explanation. Relatedly, the Court is encouraged by Estill's efforts to obtain employment and his dedication to maintaining it despite lengthy and inconvenient commutes. Lastly, the Court notes Estill's relatively limited criminal history, as discussed in the Court's recommendation concerning the prior violations, as well as the non-violent nature of the underlying transport offense and the sentencing judge's corresponding downward variance. Estill's ten-year criminal conviction history consists of only misdemeanor violations, except for the underlying federal offense. Per the Presentence Report, those misdemeanor violations primarily involved the shoplifting of food and clothing items from Wal-Mart and Kroger. And, the sentencing judge varied well below the original Guidelines range of 18-24 months on the transport offense, sentencing Estill to only 8 months' incarceration. [Presentence Report, at ¶ 55; DE 1-2].

Balancing all of the relevant considerations, the Court believes that a Guidelines-minimum sentence of 5 months' incarceration, to be followed by 24 months of supervised release,[2] is a sufficient but not greater than necessary consequence for the instant violations. *See* 18 U.S.C. 3553(a). The Court finds that it appropriately punishes Estill's breach of trust, deters further similar conduct, and reasonably protects the community from future criminality. The inclusion of

---

[2] In this revocation proceeding, the Court may impose up to three years of supervised release, less any term of imprisonment imposed upon revocation. Estill ultimately completed a time-served sentence of approximately two months (from his December 10, 2020 arrest through his February 9, 2021 admission at the Schwartz Center for inpatient treatment). Together with the 5 months that the Court recommends the District Judge impose in connection with these violations, approximately 29 months of supervised release availability remain. Under the circumstances and consistent with the analysis of the most recent violations, the Court finds a period of 24 months both statutorily permissible and sufficient, but not greater than necessary, to achieve all revocation sentencing aims.

8

substance use disorder programming as a component of supervised release also endeavors to provide Estill with treatment in the most effective manner, as § 3553(a) contemplates. *Id.* § 3553(a)(1)(D).

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS** that:

(1) Estill be found guilty of all violations;

(2) Estill's supervised release be **REVOKED**;

(3) Estill be sentenced to an incarceration period of **FIVE MONTHS**; and

(4) Estill serve a 24-month term of supervised release to follow, inclusive of the following specific condition in addition to the conditions already imposed by the underlying Judgment:

 a. Estill shall participate in outpatient substance abuse treatment upon his release from incarceration on the instant revocation sentence, with the details and mechanics of such treatment to be determined and arranged by the United States Probation Office.

Estill preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 20th day of May, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge